CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 30 2009
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

BRENDON LAMONT GANNON, SR.,

    Plaintiff,

v.

SUPERINTENDENT ALYERS, ET AL.,

    Defendant(s).

Case No. 7:09CV00066

MEMORANDUM OPINION

By: Glen E. Conrad
United States District Judge

    Plaintiff Brendon Lamont Gannon, Sr., a Virginia inmate proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In his complaint, plaintiff alleges that his incarceration in the Special Housing Unit ("SHU") at the Central Virginia Regional Jail ("the jail") for several months, under adverse living conditions, has violated his constitutional rights. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim upon which relief may be granted.[1]

## Background

    Gannon, on his complaint form, makes a brief statement of three claims and then submits a stack of neatly written narratives of things that have happened to him during his stay at the jail and copies of inmate request forms and grievances he has filed. Liberally construing his allegations, the court finds that his submissions raise the following claims for relief:

1. On July 29, 2008, after Capt. Dyer and officers with tasers took Gannon to the SHU, some of Gannon's property was lost during the move.

2. Officer Mahieu admitted to Gannon that Capt. Dyer told him to write a false charge against Gannon for not having his bunk made with the blanket on top.

---

[1] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

3. Officers David and Dudley told Gannon that he was never "getting off SHU" because he had "upset" the captain and lieutenant colonel;[2]

Gannon alleges the following facts in support of his three claims. Gannon is a federal pretrial detainee from Baltimore, Maryland. After his arrest on February 11, 2008, by federal agents, he was incarcerated for a few days at a federal prison facility. He arrived at the jail on February 15, 2008, where he was housed in a 10-man cell with one toilet that did not work. Jail trustees or other inmate volunteers had to clean a 40-man block with one bucket of diluted cleaner and no bleach. The showers had mildew growing on the walls.

Gannon also believes the hygiene items available to inmates in the jail commissary are inadequate, as only one type of toothpaste is offered and floss is not offered. He complained to officials soon after his arrival that the food items available in the jail commissary are not healthy, because they are full of sugar and salt. Gannon wrote complaints to jail officials about the commissary's shortcomings and about the cleaning products provided.

In April, Gannon was charged with a disciplinary infraction and sent to the SHU for being part of a group of inmates who were fighting. At the disciplinary hearing, the hearing officer found Gannon not guilty of the offense charged, and he was moved out of the SHU. In June, Gannon received another disciplinary charge for "running the block" and went back to SHU for two weeks during the investigation. An officer told Gannon that he was moved to the SHU because of his complaints about cleaning supplies. After four months at the jail, Gannon obtained a grievance form and filed a grievance about the inadequate cleaning supplies, the commissary issues, and the need for a jail handbook that Spanish-speaking inmates could read.

Gannon was gone from the jail for a week in July 2008 for court. When he returned to the jail on July 25, 2008, he was issued a top bunk and a wool blanket. Because he is allergic to wool, he requested a cotton blanket, but in the meantime, put the wool blanket underneath his mattress

---

[2] Gannon, a federal pretrial detainee, states in a pleading dated February 9, 2009, that at that point, he had been on SHU for 196 days.

Case 7:09-cv-00066-GEC-mfu   Document 5   Filed 03/30/09   Page 2 of 10   Pageid#: 123

when making his bed. On July 29, 2008, officers came through to inspect the block. Gannon asked to speak to Captain Dyer about the items in the commissary. The captain told him that the items were fine and if he did not like them, he did not have to eat them. Later, while the inmates were cleaning the cell block, Dyer and other officers returned and took Gannon to the SHU. He received a charge that he had not made his bunk after an officer gave him a direct order to do so. Gannon claims that no officer ever gave him such an order that day. On August 2, 2008, after a disciplinary hearing, Gannon was found guilty of the offense and sentenced to "five days punitive." Gannon remained in the SHU for several months after his sentence had been served. He would ask officers when he could return to general population, and they would respond that it was in the hands of the captain and lieutenant colonel, because Gannon had "upset" them.

In November 2008, Gannon complained to a nurse that although he had asked her in October to discuss his 20-pound weight loss with the doctor, he had heard nothing further. The nurse said she had forgotten. In response, Gannon refused to allow her to check his weight and blood pressure. An officer then ordered Gannon to allow the nurse to take the tests. Gannon refused again. He was charged with refusing to obey a direct order and shortly thereafter, was charged with lying or giving a false statement to an employee for filing a request form stating that Officer Dudley had told him that he was still in the SHU "because of Cpt. Dyer." Found guilty after a disciplinary hearing, Gannon was sentenced to "four days punitive." In December 2008, Gannon was charged with disobeying a direct order to return his meal tray. He asserted in his defense that he was not yet finished eating. Gannon accepted a penalty offer of "5 days punitive isolation." Also in December, he was charged with threatening bodily harm to an employee. This charge was reduced to disrespect, and Gannon received another penalty of "3 days punitive."

In October 2008 and again in February 2009, Gannon was put into SHU cells that had "no heat," and he alleges that officers told him this cell assignment came directly from Captain Dyer. Gannon claims in his narrative that he can see his breath while housed in this cell and that he has to wear extra clothes and use extra blankets to keep warm at night. After being in these cells, he

developed "flu-like symptoms." He also complains that during recreation and while showering, SHU inmates must remain shackled, that the toilets in the cells do not work, and that the water is brown.

Gannon provides the court with details about how commissary items have affected him. He is a vegetarian and receives a vegetarian meal at the jail. In March 2008, he started eating items from the commissary. Soon, he noticed changes in his bowels, began developing headaches, and sometimes felt dizzy while exercising. In October, he began having stomach pain, constipation, and excess gas. Then, in November 2008, he was taken to the hospital because he felt like he was having a heart attack. The doctor diagnosed him with a "minor case of a gastric attack," likely caused by the commissary items Gannon had been eating, which were high in sugar and salt. The doctor prescribed a stomach medication.

Gannon does not believe that he should be housed in the SHU, as he as been for over 200 days, because his disciplinary infractions have all been nonviolent. He believes (and officers have allegedly told him) that he remains in the SHU because of the grievances he has filed about jail living conditions. When he asked in October 2008 why he had remained in the SHU for so long, the lieutenant's response was: "[while] you have not exhibited violence, your institutional adjustment has been disruptive and your behavior towards other inmates and staff members warrants your housing assignment."

Gannon has raised the same or similar claims in two previous civil actions, Case No. 7:08CV00394 and Case No. 7:08CV00570. The court dismissed both of these actions, pursuant to 28 U.S.C. § 1915A(b)(1), because the allegations either failed to state a constitutional claim or because the claims were malicious. In refiling the claims, Gannon apparently believes that by providing additional details, he can transform his claims into constitutional violations that are actionable under § 1983. As relief in this action, he seeks monetary damages and presents a long list

of requests for injunctive relief based on his suggestions on how jail living conditions could be improved.[3]

## Discussion

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted." Factual allegations must be enough to raise a right to relief above the speculative level and have "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, ___, 127 S. Ct. 1955, 1974 (2007). A litigant may be deemed to act maliciously if his motive is to vex and harass the defendants. Johnson v. Edlow, 37 F. Supp.2d 775, 776 (E.D. Va. 1999) (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)). In determining whether an action is malicious, the court must review not only the instant complaint, but also the plaintiff's prior litigious conduct. Id. (citing Cochran v. Morris, 73 F.3d 1310, 1316-17 (4th Cir. 1996)).

---

[3] As part of the request for relief, Gannon's complaint includes a long list of injunctions that he seeks, requiring the jail: to limit SHU housing to a maximum of 72 days, with a review of housing assignment every 30 days; to carry additional commissary items, including healthy food items, a baking soda and peroxide toothpaste, a toothpaste for sensitive teeth, dental floss, Q-tips, and better mouth wash; to set up a different system to determine whether an inmate's infractions warrant housing him in the SHU; to use a video camera whenever force is used; to appoint a liaison to federal detainees, an unbiased, outside disciplinary hearing officer, and a grievance officer; to provide a "complete law library"; to provide a set of barber clippers for each cell block; to provide separate housing for federal pretrial detainees where such inmates would enjoy the privileges of federal pretrial detainees in other facilities; to provide water coolers in every cell block; to provide a computer to every cell block for inmates to use in doing legal work; to allow inmates to worship as they believe and purchase prayer rugs; to have regular federal inspections of the jail's facilities; to require that kitchen workers be screened for diseases, cut their nails, cut their hair, and be supplied with clean work shoes and uniforms; to provide a microwave oven for every cell block; to supply cable television to the entire jail population; to pay jail trustees at least $2.00 per day; to provide heat to all SHU cells; to hold elections on each block to elect representatives that would meet each week with the superintendent to discuss the problems on the individual blocks; and to let inmates pack their own belongings when they are moved from one cell to another; .

-5-

A pretrial detainee's claims regarding prison conditions must be addressed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535-38 (1979). Officials may not take actions against pretrial detainees with the purpose or intent of punishing them. United States v. Cobb, 905 F.2d 784 (4th Cir. 1990). Punitive intent may be inferred when the state action was not reasonably related to a legitimate non-punitive objective. Id. Conditions of confinement cannot be considered punishment so long as they are rationally connected to a legitimate, non-punitive penological purpose and are not excessive in relation to that purpose. Bell, 441 U.S. at 535-38; Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) ("[T]he Constitution is not concerned with a de minimis level of imposition on pretrial detainees.") (internal quotation marks and citation omitted). As a practical matter, the contours of the Due Process Clause in the prison context are coextensive with the substantive constitutional principles applied via the Eighth Amendment to convicted inmates. Riley v. Dorton, 115 F.3d 1159, 1166-67 (4th Cir. 1997)(excessive force); Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992) (medical needs).

Convicted inmates' liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In Sandin, the Court found that disciplinary segregation did not constitute atypical and significant hardship so as to warrant federal due process protections where: (1) the disciplinary segregation mirrored conditions of other forms of completely discretionary confinement; (2) based on a comparison between inmates inside and outside of disciplinary segregation, the state's action in placing the defendant in segregation did not significantly disrupt the defendant's environment; and (3) the state action did not affect the duration of the defendant's sentence. Id.

The United States Court of Appeals for the Fourth Circuit has held that confining segregation inmates for more than six months in conditions much worse than those Gannon alleges was

- 6 -

Case 7:09-cv-00066-GEC-mfu   Document 5   Filed 03/30/09   Page 6 of 10   Pageid#: 127

insufficient to trigger any federal right to due process before an inmate may be subjected to such conditions. Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997). The Beverati segregation inmates complained of no outside recreation, no clean clothes, less food, and cells infested with vermin and smeared with urine and feces. Id. Although they did not suffer these conditions as long as Gannon has been housed in the SHU, the conditions were much more severe. Balancing these factors, the court cannot find that the segregation conditions of which plaintiff complains were atypical enough to impose "a significant hardship in relation to the ordinary incidents of prison life." Id.

Gannon complains that conditions in the SHU are quite different from those he enjoyed in the general population. He must wear shackles in recreation or while showering, and the cells are sometimes colder.[4] The court cannot find that the few differences in conditions that Gannon has detailed between general population and the SHU are atypical enough in the prison setting to give rise to a federally protected liberty interest. As such, he is not entitled to federal procedural protections before being assigned to the SHU. Moreover, Gannon's own allegations indicate that he has incurred several disciplinary charges during the last several months. While he may believe that the behavior for which he was charged did not justify any charge, the fact remains that his housing assignment rests entirely at the discretion of the officers who are assessing his behavior and adjustment to prison life. His belief that rules and conditions could be improved if he were in charge does not prove that existing rules and conditions violate his constitutional rights. The court does not find, from his detailed allegations, that his months long stay in the SHU, in and of itself, presents any constitutional violation.

For the same reason, Gannon's claim that he received a false charge for not making his bunk does not rise to constitutional proportions. The penalty imposed for this disciplinary conviction (and indeed, for all of the disciplinary convictions of which Gannon complains) was assignment to the SHU. As the court has already determined that the conditions in that housing assignment are not so

---

[4] Gannon complains about the commissary items available, but does not indicate that commissary offerings are any different for SHU inmates than for general population inmates.

atypical as to give rise to federal due process protections, Gannon's allegations simply do not present any federal claim.

Gannon may also be presenting a claim that the individual or collective conditions at the jail, in the general population or the SHU, are harsh enough to constitute punishment, in violation of his Due Process rights. As stated, such Due Process claims regarding conditions of confinement for a pretrial detainee are measured against the Eighth Amendment standard. Plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the first prong of this standard, plaintiff must show, objectively, that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions, see Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993), or that plaintiff's continued, unwilling exposure to the challenged conditions creates a substantial risk of such harm, see Helling v. McKinney, 509 U.S. 25, 31 (1993).

Gannon's allegations do not demonstrate any constitutional violation. He does not allege that he is deprived of nutrition. He admits that he receives a vegetarian meal plan at the jail. Thus, it was his choice to consume commissary items, and no jail official can be held liable for the gastric problems he suffered as a result, apparently, of that choice.[5] Gannon does not allege that he suffered any serious or significant injuries as a result of the cleanliness problems at the jail, from using only one kind of toothpaste and no floss, or from the alleged lack of heat in some SHU cells. He admits that he had thermal clothing and extra blankets while in the colder cells, and he was housed there for only a brief time. Although he alleges that he suffered "flu-like symptoms," he does not indicate

---

[5] Furthermore, inmates have no constitutional right to a commissary, let alone one with particular items for sale. See, e.g., Cato v. Watson, 212 Fed. App'x 258, 259-60 (5th Cir. 2006) (finding that inmates have no liberty interest in commissary privileges); Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir.1996) ("[W]e note that we know of no constitutional right of access to a prison gift or snack shop."); French v. Butterworth, 614 F.2d 23, 24 (1st Cir. 1980) (finding that inmates do not have a constitutionally protected right to purchase commissary items at low prices).

that these symptoms were severe enough to require medical treatment, nor does he allege any facts on which he could prove that the ailment was caused by the unpleasant cell temperature. He does not demonstrate any injury resulting from the restrictions on his recreation and showering. In short, the court is satisfied that Gannon could not prove facts consistent with his detailed allegations so as to state any claim that the jail living conditions of which he complains are violative of his constitutional rights.

Finally, in Claim 1, Gannon complains that some of his property was lost when he was moved to the SHU because he was not allowed to pack his own property. Allegations that prison officials randomly deprived an inmate of his property, whether intentionally or as a result of negligence, do not state any constitutional claim "if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517 (1984). Inasmuch as Gannon possessed tort remedies under Virginia state law, see Virginia Code § 8.01-195.3, he cannot prevail in a constitutional claim for the alleged property loss in this case.

## Conclusion

For the stated reasons, the court concludes that Gannon's allegations do not state any claims that the jail conditions and events of which he complains have violated (or are violating) his constitutional rights. Therefore, he fails to state any claim actionable under § 1983.[6] The court will dismiss his complaint accordingly, pursuant to § 1915A(b)(1). An appropriate order shall be issued this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of

---

[6] Section 1983 was intended to protect only federal rights guaranteed by federal law and not tort claims for which there are adequate remedies under state law. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Therefore, to the extent that Gannon is alleging that defendants' actions violated state law, his complaints are not independently actionable under § 1983, and the court declines to exercise supplemental jurisdiction over them in this action. See 28 U.S.C. § 1367(c). All such claims will be dismissed without prejudice accordingly.

Case 7:09-cv-00066-GEC-mfu   Document 5   Filed 03/30/09   Page 9 of 10   Pageid#: 130

the date of entry of this opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 30th day of March, 2009.

/s/ Glen C. Conrad
United States District Judge